*848 OPINION.
Murdock:
The petitioner and the respondent agree that the only issue in the case is the cost to the petitioner of the leasehold when acquired on November 12, 1918, since the cost must be the basis for computing the gain or loss on its cancellation in 1922 and for exhaustion purposes during the four taxable years in question. In order to prove the cost of the leasehold for which it exchanged $200,000 par value of its capital stock, the petitioner has attempted to show that the leasehold had a value of at least $200,000 at the time of the transfer while the Commissioner has determined that “ no value should be assigned to the leasehold for depreciation purposes or as a basis for the computation of the profits realized upon its sale in 1922.”
It appears from the testimony that prior to the execution of the lease in question the hotel had been unsuccessfully operated by the owner and the prior lessee. Before entering into the lease the owner had negotiated with several prospective lessees, none of whom would agree to pay the amount of rent and to pay out and advance for bet-terments and improvements the amounts which were finally agreed to be paid by Baker. These facts would seem to show that the lessor had made every attempt to procure and did procure all that the property was worth when it made the lease, and that the lease so made had no bonus value at the time over and above the amounts agreed to be paid. It is further shown by the testimony that there was no market for hotel leases in the city at that time and that the value of the lease, if any, did not increase between the date it was made and the date when it was acquired by the petitioner some six weeks later.
All these facts corroborate the Commissioner’s determination that the lease had no bonus value when assigned. The petitioner therefore had the task of convincing us by its evidence that the Commissioner’s determination, strengthened by the facts indicated above, is incor *849 rect and that when assigned to the petitioner the lease had some cash value.
In order to meet the burden of proving value, the petitioner offered the opinion testimony of three witnesses, all of whom had been engaged in the hotel business as managers or owners during the year 1918 and prior thereto. Even if it be assumed that as managers they were qualified to give an opinion as to the cash value of a hotel lease, the weight to be attached-to their opinions also depends upon whether or not they were familiar with the property in question and the conditions at the time and on whether or not they have used proper bases or factors in arriving at their valuations.
In the opinion of all three witnesses the lease had a cash value of $200,000 or more at the time of its assignment. However, an examination of their testimony will show that one witness, Clancy, based his opinion upon the belief that the Planters Hotel property was worth $2,000,000, and that a fair return thereon was 7 per cent or $140,000 a year which he compares with a rental of $65,000 a year, an amount which he seems to assume was the rental the lessee would be required to pay. He has also testified that he himself would not have paid $200,000 for the lease unless he was assured the hotel would do $2,000,000 worth of business yearly. It is apparent that if the hotel did a business of this amount the lessee would be required to pay $200,000 as rental under the terms of the lease, which would exceed by $60,000 the amount -which the witness considered a fair rental. In addition there is no satisfactory basis for a $2,000,000 valuation of the hotel property, and this valuation is merely an assumption on the part of the witness.
The remaining two witnesses have set a fair rental value for the property based upon an amount varying from $20 to $30 for each room-month, and, by substracting from a total yearly rental so computed a minimum yearly rental of $65,000, have found an estimated profit to the lessee for each year and thus have formed their opinions as to the cash value of the lease. The lease provides for no definite amount as rental, but only for a certain percentage of gross receipts. The witnesses may possibly have had the nature of this rental in mind when they gave their opinions as to values but it is difficult to see any connection between a rental of this kind and a rental of 7 per cent of an estimated valuation of the physical property or a yearly rental based upon a monthly value of each room in the hotel, and when the witnesses use for their comparison a rental of $65,000 a year it is seen that they have clearly misunderstood the requirements of the lease as to the rentals which were to be paid. A careful consideration of the testimony of these three witnesses forces us to hold that regardless of their qualifications their opinions de *850 pend upon an erroneous understanding of the real terms of the lease and that their comparisons between the rentals set forth therein and the rentals which they consider to be fair are so confusing that their opinions can not serve to overcome a value set by parties dealing at arm’s length within such a short period of time before the assignment. See Trimount Theatres, Inc., 4 B. T. A. 203; Lafayette Hotel Co., 5 B. T. A. 800; and The Hippodrome Co., 10 B. T. A. 1010.
The petitioner in its brief points out that the lease was canceled in 1922 by the lessee upon the receipt of the sum of $200,000, and that this fact establishes the value as of that date which value would not be more than the value in November, 1918. However, we can not see that the amount paid by the lessor in 1922 was any indication of the value of the lease in 1918. New circumstances and new considerations were present in 1922 which were not present in 1918. Indeed, the testimony shows that this amount was paid so that the lessor could deliver possession upon the sale of the premises at that time to a prospective purchaser unhampered by a lease thereon.
The Commissioner has indicated in his deficiency letter that if the petitioner were able to prove the amount which it spent in betterments and improvements in accordance with the lease, he would allow exhaustion thereon and a deduction of its unextinguished value for the purpose of computing gain or loss upon the cancellation in 1922. This would seem to be a proper allowance. See George S. Scoville, 2 B. T. A. 813; National City Bank of Seattle, 1 B. T. A. 139; Louis C. Levy, 2 B. T. A. 361. However, the petitioner has not seen fit either to allege or to prove the amount of any such expenditure and in the absence of such allegation or proof no amount can be allowed.

Judgment will be entered for the respondent.